**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

```
---------------------------------------------x
                                             :
WILBUR MACY and PAMELA J. STOWE,             :   Case No.: 3:15-cv-00819-DJH
on behalf of themselves and others similarly :
situated,                                    :
                                             :
                Plaintiffs,                  :
                                             :
       v.                                    :
                                             :
                                             :
GC SERVICES LIMITED PARTNERSHIP,             :
                                             :
                Defendant.                   :
---------------------------------------------x
```

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

**Statement of Relief Requested**

In connection with their putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., Wilbur Macy and Pamela J. Stowe (collectively, "Plaintiffs") respectfully request that this Court certify this action as a class action under Rule 23, appoint them as class representatives, and appoint their counsel as class counsel. Plaintiffs accordingly submit that this Court should certify the following class:

> (1) All persons with a Kentucky or a Nevada address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client," (3) between November 5, 2014 and November 5, 2015, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.

**Summary of the Argument**

This Court should certify this matter as a class action. Discussed *infra*, Plaintiffs' claims are based on identical language in form letters used by GC Services Limited Partnership ("Defendant") as part of its consumer debt collection efforts. Indeed, Defendant mailed materially identical initial debt collection letters to over 9,000 persons within Kentucky and Nevada between November 5, 2014 and November 5, 2015, each of which contained the same language as the letters that Plaintiffs received—language that Plaintiffs allege violates 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5). Dkt. No. 1. As a result, Plaintiffs' claims satisfy the numerosity, commonality, and typicality elements of Rule 23(a).

Plaintiffs' claims likewise satisfy the predominance and superiority requirements of Rule 23(b). Moreover, Plaintiffs are firmly committed to this case and are adequate class representatives. For these reasons, Plaintiffs respectfully request that this Court grant their motion for class certification, appoint them as class representatives, and appoint their counsel as class counsel.

**Background**

On or about June 19, 2015, Defendant sent a written communication to Mr. Macy in connection with the collection of a consumer debt allegedly owed by him. ¶ 20.[1] The June 19, 2015 communication was the first communication Mr. Macy received from Defendant with regard to the alleged debt. ¶ 22. Mr. Macy did not receive any additional written communications from Defendant within five days of the June 19, 2015 communication. ¶ 24.

---

[1] All references to ¶__ or ¶¶__ are references to paragraphs in Plaintiffs' Class Action Complaint. *See* Dkt. No. 1.

The June 19, 2015 communication to Mr. Macy stated, "Your Sam's Club MasterCard Account, which was issued by and owed to Synchrony Bank, has been referred to us by our client for collection." ¶ 26. The June 19, 2015 communication then advised Mr. Macy, in pertinent part:

> As of the date of this letter, our records show you owe a balance of $767.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please contact us. If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.
>
> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

¶ 27.

On or about July 5, 2015, Defendant sent a written communication to Ms. Stowe in connection with the collection of a consumer debt allegedly owed by her. ¶ 21. The July 5, 2015 communication was the first communication Ms. Stowe received from Defendant with regard to the alleged debt. ¶ 23. Ms. Stowe did not receive any additional written communications from Defendant within five days of the June 19, 2015 communication. ¶ 25.

The July 5, 2015 communication to Ms. Stowe stated, "Your JCPenney CreditCard Account, which was issued by and owed to Synchrony Bank, has been referred to us by our client for collection." ¶ 28. The July 5, 2015 communication then advised Ms. Stowe, in pertinent part:

> As of the date of this letter, our records show you owe a balance of $6,491.00 to Synchrony Bank. If you dispute this balance or the validity of this debt, please contact us. If you do not dispute this debt within 30 days after you receive this letter, we will assume the debt is valid.
>
> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and

> send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

¶ 29.

Defendant's June 19, 2015 and July 5, 2015 debt collection letters indisputably omitted the "in writing" and "written request" language required by 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. § 1692g(a)(5), respectively. *See* Dkt. Nos. 1-1 and 1-2. As a result, Defendant violated the FDCPA by providing inaccurate disclosures regarding Plaintiffs' statutory rights and how they may exercise them. *See, e.g.*, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) ("We reject the notion that § 1692g gives debt collectors discretion to omit the 'in writing' requirement or cure improper notice by claiming waiver. The statute is clear. The debt collector 'shall' notify the consumer of her right to dispute the debt in writing."); *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 869 (S.D. Tex. 2011) ("The plaintiffs have stated a plausible claim based on the defendant's failure to state in the letter that a request under subsections 1692g(a)(4) and (a)(5) had to be in writing."); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-46 (E.D. Va. 2011) ("As far as this Court can tell, all of them have held that a debt collector's failure to include the 'in writing' requirement violates subsections (a)(4) and (5) of Section 1692g."); *Carroll v. United Compucred Collections, Inc.*, No. 1–99–0152, 2002 WL 31936511, at *8 (M.D. Tenn. Nov. 15, 2002) ("Whether this failure to inform the debtor of the writing requirement is a violation of section 1692g(a)(3) is not unequivocally clear, but it is clearly a violation of section 1692g(a)(4).").[2]

---

[2] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

Pertinent to Plaintiffs' instant request, during the proposed class period of November 5, 2014 to November 5, 2015, Defendant mailed over 9,000 written communications to persons within Kentucky and Nevada that omitted the "in writing" and "written request" language required by 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. § 1692g(a)(5), respectively. And as Defendant provided Plaintiffs with a list of the names and addresses of each of these persons, there is no issue ascertaining the identities of the members of the proposed class. *See* Defendant's Objection and Answers to Plaintiffs' First Set of Interrogatories, attached hereto as Exhibit A, at pp. 4-20 (stating that Defendant would produce documents identifying all the persons meeting Plaintiffs' putative class definition in ¶ 36 of Plaintiffs' Class Action Complaint.).[3]

### Argument

To attain certification of the proposed class, Plaintiffs must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Passa v. City of Columbus*, 266 F.R.D. 197, 206 (S.D. Ohio 2010) (certifying FDCPA class).[4]

### I.     The FDCPA is well-suited for class action treatment.

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection

---

[3]     Defendant has since produced the class list to Plaintiffs. Given the sensitive nature of the information contained in the class list, Plaintiffs have not attached it to this motion.

[4]     In certifying a class, this Court should consider that certification is conditional and may be modified or vacated as the case progresses toward resolution on the merits. Fed. R. Civ. P. 23(c)(1)–(4); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

with the collection of debts by third parties. 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692(k). The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.").

Class treatment of claims under the FDCPA is essential to its statutory structure. "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of

Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. *See* 15 U.S.C. § 1692k(a),(b).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007). ("Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages."). As the Ninth Circuit stated:

> … because the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk.

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006)

To that end, the Sixth Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-39 (6th Cir. 2008). This standard requires an objective analysis of whether a particular communication would deceive or mislead the least sophisticated debtor. *Fed. Home Loan Mortgage Corp.*, 503 F.3d at 509.

Against this backdrop, courts both within and outside the Sixth Circuit routinely certify FDCPA class actions based upon violative debt collection communications. *See, e.g.*, *Luther v. Convergent Outsourcing, Inc.*, Case No. 15-10902, 2016 WL 1698396, at *6 (E.D. Mich. Apr. 28, 2016) (certifying class action); *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188, 2016

WL 1070666, at *11 (N.D. Cal. Mar. 18, 2016) (granting class certification); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 652, n.7 (M.D. Fla. 2015) ("[T]he overwhelming majority of courts that have considered challenges to certifying FDCPA classes when the communications are allegedly identical have found Rule 23(b)(3) requirements met and certified classes."); *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 117 (E.D.N.Y. 2015) ("As is set forth below, this case, together with other FDCPA cases, militate toward granting the Plaintiff's [motion for class certification]."); *Passa*, 266 F.R.D. at 207 (granting class certification); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005) (affirming order granting class certification).

## II. Plaintiffs satisfy the requirements of Rule 23(a).

### A. The members of the class are so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As the Sixth Circuit has explained, "[t]here is no strict numerical test for determining impracticability of joinder." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). But while the numerosity requirement is not tied to any fixed numerical threshold, "substantial" numbers usually satisfy this requirement. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

Here, Defendant mailed letters to over 9,000 persons with Kentucky and Nevada addresses between November 5, 2014 and November 5, 2015, each of which contained materially identical language as that which Plaintiffs contend violates the FDCPA. As the proposed class has more than 9,000 members, it is sufficiently numerous that joinder is

impracticable. *See Beard v. Dominion Homes Fin. Servs., Inc.*, No. 06-00137, 2007 WL 2838934, at *4 (S.D. Ohio Sept. 26, 2007) (finding numerosity satisfied with 41 class members); *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 552 (S.D. Ohio 1999) (80 class members sufficient to satisfy numerosity); *Passa*, 266 F.R.D. at 202-03 (granting class certification where hundreds or thousands of communications were allegedly sent by the defendant).

### B. Questions of law and fact are common to the members of the class.

The commonality requirement of Rule 23 demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In FDCPA cases, "[w]here plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class." *D'Alauro v. GC Serv. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

"Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking*, 2011 WL 5325674, at *2. Each class member, therefore, has the same claim against Defendant, and the commonality requirement accordingly is met. *See Wess v. Storey*, No. 08-623, 2011 WL 1463609, at *7 (S.D. Ohio Apr. 14, 2011) ("The Class Members share common questions of law and fact that are substantial and material to Defendants' liability on class claims, including the precise nature and extent of Defendants' collection practices and whether those practices violate the FDCPA and/or the CSPA."); *Mann v. Acclaim Fin. Serv., Inc.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) ("The class proposed in this case consists of all consumers who received an initial communication from Acclaim stating, 'In addition, if this debt is not paid within 30 days of the receipt of this letter, this debt will be placed on your personal credit report records for 7 years (5 in New York).' While plaintiff has raised

additional claims, there remains at least one issue common to all members of the class, *i.e.*, whether this language violates the FDCPA and/or the OCSPA.").

As the claims asserted by Plaintiffs and the class originate from the same conduct, practice, and procedure on the part of Defendant—namely the issuance of initial debt collection letters with standardized language—each member of the class has an identical FDCPA claim based upon the same allegedly violative language in Defendant's initial written communications. *See Passa*, 266 F.R.D. at 203. ("Here, plaintiff's proposed certification of the class and subclass would require that each member have received a communication regarding the Check Resolution Program from the City. Stated differently, the factual and legal questions surrounding such communications are common to the proposed class and subclass and they are the focus of this litigation."); *Bogner v. Masari Invs., LLC*, 257 F.R.D. 529, 532 (D. Ariz. 2009) ("the commonality requirement has been met because Plaintiffs allege that 'a standard letter sent by Defendants, to each member of the proposed class, was unfair and deceptive, in violation of the FDCPA'"). As a result, the commonality element of Rule 23 is satisfied.

### C.     Plaintiffs' claims are typical of the claims of the members of the class.

The third requirement under Rule 23(a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

Here, typicality is satisfied as Defendant sent debt collection letters with materially identical language to thousands of persons in Kentucky and Nevada during the class period, all of whom have FDCPA claims identical to Plaintiffs based solely on the text of the debt

10

collection letters they were sent. *See Mann*, 232 F.R.D. at 284-85 (finding typicality satisfied when plaintiff and class members received debt collection communications containing the same language); *Wess*, 2011 WL 1463609, at *8 ("Here, the representative party's claims are typical in that they have been subjected to the same debt collection practices as the Class Members, and allege the same legal and remedial theories of relief based upon the FDCPA and CSPA for themselves as they assert for absent Class Members.").

To be sure, there is no doubt that Plaintiffs are members of the proposed class and that their claims are typical of those of the other members of the class. *See* Dkt. No. 1-1, 1-2 (demonstrating that Mr. Macy and Ms. Stowe are each a member of the class in that they were sent the violative letter at issue during the class period).

### D. Plaintiffs and their counsel will fairly and adequately protect the interests of the class members.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class.

Here, Plaintiffs have diligently pursued this case since its inception with the goal of obtaining relief for the members of the class, and forcing Defendant to change its practices moving forward. Moreover, Plaintiffs' claims are aligned with the claims of members of the proposed class and Plaintiffs are committed to vigorously pursuing the members' claims with their best interests in mind. *See* Declaration of Wilbur Macy, attached hereto as Exhibit B, at ¶¶ 5-6; Declaration of Pamela J. Stowe, attached hereto as Exhibit C, at ¶¶ 5-6. Indeed, Plaintiffs already rejected individual offers of judgment in this matter because the offers, if accepted, would have provided no relief to members of the putative class. *See* Dkt. No. 14. In short,

11

Plaintiffs stand willing and prepared to serve this Court and the class. *See Wess*, 2011 WL 1463609, at *9 ("Plaintiffs have no interests antagonistic to those of the absent Class Members and sought the same relief for themselves as they do for the class. In addition, Plaintiffs and each Class Member have been damaged by the same alleged misconduct and, as a result, each has precisely the same interest in achieving the maximum recovery.").

Moreover, Plaintiffs have retained the services of counsel who are well-versed in class action litigation. *See, e.g.*, *Gonzalez v. Germaine Law Office PLC*, No. CV-15-01427-PHX-ROS, 2016 WL 3360700 (D. Ariz. Jun. 1, 2016); *Harper v. Law Office of Harris and Zide LLP*, Case No. 15-cv-01114-HSG, 2016 WL 2344194 (N.D. Cal. May 4, 2016) (granting preliminary approval of class action settlement under the FDCPA and appointing Greenwald Davidson Radbil PLLC as class counsel); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15–418, 2016 WL 1273297, at *1 (S.D. Ohio Mar. 31, 2016); *Schuchardt v. Law Office of Rory W. Clark*, Case No. 15-cv-01329-JSC, --- F.R.D. ----, 2016 WL 1701349 (N.D. Cal. Apr. 28, 2016) (granting final approval of class action settlement under the FDCPA and appointing Greenwald Davidson Radbil PLLC as class counsel); *Brown v. Hunt & Henriques, Attorneys at Law*, Case 5:15-cv-01111-EJD, ECF No. 45 (N.D. Cal. Apr. 26, 2016) (granting preliminary approval of class action settlement under the FDCPA and appointing Greenwald Davidson Radbil PLLC as class counsel).[5] As a result, Plaintiffs and their counsel satisfy the adequacy prong of Rule 23(a), and Plaintiffs counsel satisfies Rule 23(g)(1)(A).

---

[5] Plaintiffs' counsel has been appointed class counsel in more than two dozen consumer protection class actions in the past two years. *See, e.g.*, *McWilliams v. Advanced Recovery Systems, Inc.*, 310 F.R.D. 337, 340 (S.D. Miss. 2015) ("Because proposed class counsel have significant experience litigating similar consumer protection class actions and because of their work performed on behalf of Ms. McWilliams and the classes to date, the Court finds proposed class counsel satisfy Rule 23(g)."); *Roundtree*, 304 F.R.D. at 661 ("As set forth in greater detail in her motion, Greenwald [Davidson Radbil

### E. Plaintiffs satisfy the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

#### 1. The questions of law and fact common to the class predominate.

Rule 23(b) mandates that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594, (1997). The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

---

PLLC] has been appointed as class counsel in a number of actions and thus provides great experience in representing plaintiffs in consumer class actions."); *see also Prater v. Medicredit, Inc. and The Outsource Group, Inc.,* No.: 4:14–cv–00159–ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015), *Rhodes v. Olson Associates, P.C. d/b/a Olson Shaner*, 83 F. Supp. 3d 1096 (D. Colo. 2015); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329 (S.D. Fla. Feb. 23, 2015); *Donnelly v. EquityExperts.org, LLC*, 4:13–CV–10017–TGB–RSW, 2015 WL 249522 (E.D. Mich. Jan. 30, 2015); *Ritchie v. Van Ru Credit Corp.*, Case No.: 12–CV–01714–PHX–SMM, 2014 WL 3955268 (D. Ariz. Aug. 13, 2014).

Here, the central legal issue before this Court is whether Defendant's debt collection letters violated the FDCPA. Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection letters, as is the case here. As a result, Plaintiffs readily satisfy the predominance requirement. *See, e.g.*, *Bicking*, 2011 WL 532674, at *3 ("In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue. And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case."); *Lewis v. ARS Nat'l Servs., Inc.*, No. 2:09-cv-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011) ("Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs.  Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled")..

> **2. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' claims, and the claims of class members.**

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class;[6] (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Because the claims in this case arise from a form initial debt collection letter used by Defendant, a class action is the superior vehicle for determining the rights of absent class members. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification.")

> In certifying FDCPA claims, the court in *McDonald v. Asset Acceptance, LLC* explained:
>
> Here, individual class members are likely to be unaware of any violation. There is evidence that the class potentially consists of [many] members. In addition, estimated statutory damages for violations of the FDCPA are likely to be fairly small. Therefore, Plaintiffs demonstrated that a class action is the superior method of adjudication in this case.

296 F.R.D. 513, 522 (E.D. Mich. 2013); *see also Carroll*, 399 F.3d 620, 625 (rejecting argument that class treatment of FDCPA claims was not the superior means of adjudicating those claims because the approximate amount that could be recovered by each of the estimated 164 members of the putative class would be $60); *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) ("Case law affirms that class actions are a more efficient and consistent means of trying the legality of collection letters."). The same is true here.

No one member of the class has an interest in controlling the prosecution of the action because the claims of all members of the class are identical, as the allegations involve standardized conduct. Class members who litigated their claims individually would have less litigation or settlement leverage and significantly reduced resources should they be required to

---

[6] Plaintiffs are not aware of any other cases asserting identical claims against Defendant on behalf of Kentucky or Nevada consumers.

individually litigate their claims. *Magallon v. Robert Half International, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015). Alternatives to a class action are either no recourse for thousands of class members, or a multiplicity of suits resulting in the inefficient administration of the litigation. *See Luther*, 2016 WL 1698396, at *6 ("Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims."). Absent a class action, many claims identical to those asserted by Plaintiffs will go unaddressed. For these reasons, a class action is the superior method to adjudicate this controversy.

## Conclusion

Plaintiffs respectfully request that this Court grant their motion for class certification and appointment of class counsel, appoint them as class representatives, and appoint Greenwald Davidson Radbil PLLC as class counsel.

Dated:  June 20, 2016                                        Respectfully submitted,

*/s/ Shireen Hormozdi*
Shireen Hormozdi
Kentucky Bar No. 93993
1770 Indian Trail Lilburn Road
Suite 175
Norcross, GA 30093
Tel: (800) 994-9855
Fax: (866) 929-2434
shireen@norcrosslawfirm.com

*/s/ James L. Davidson*
James L. Davidson (*pro hac vice*)
Greenwald Davidson Radbil PLLC

16

5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com

Counsel for Plaintiffs and the proposed class

## CERTIFICATE OF SERVICE

I certify that on June 20, 2016, I filed the foregoing document with the clerk using the Court's CM/ECF system which caused notice to Defendant's counsel of record:

William S. Helfand
Lewis Brisbois Bisgaard & Smith LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77002
Telephone: (713) 654-9630
bill.helfand@lewisbrisbois.com

*/s/ James L. Davidson*
James L. Davidson (*pro hac vice*)