**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| WILBUR MACY and PAMELA J. STOWE, on behalf of themselves and others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>   Defendant. | Civil Action No. 3:15-cv-00819-DJH |

**DEFENDANT, GC SERVICES LIMITED PARTNERSHIP'S,
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
<u>APPOINTMENT OF CLASS COUNSEL</u>**

  1. The Court should deny Plaintiffs' motion for class certification because, as a threshold matter, the named Plaintiffs lack standing to bring this suit and, therefore, to confer subject matter jurisdiction and, even if, *arguendo,* Plaintiffs had standing, their proposal to certify a class does not satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and their motion does not meet the requirements for class certification under Rule 23(b). Accordingly, the Court should deny Plaintiffs' motion for class certification and appointment of class counsel, [Dkt. 22], for the following reasons, alone or in combination:

#### BACKGROUND

  2. Plaintiffs filed this lawsuit on November 5, 2015 as a potential class action claiming Defendant, GC Services Limited Partnership's, debt collection practices violated the Fair Debt Collection Practices Act (the "FDCPA" or "Act"). The named Plaintiffs, Macy and Stowe, are individuals residing in Kentucky and Nevada, respectively, who purchased items using their credit

cards issued by Synchrony Bank. Dkt. 1, at ¶¶ 8-9, 11. When Plaintiffs failed to pay their respective debts owed to Synchrony Bank, Synchrony Bank retained GC Services to collect those debts.

3. In its attempts to collect Plaintiffs' debts owed to its client, Synchrony Bank, GC Services sent a personalized letter to each named Plaintiff (the "Letters"), which stated in relevant part:

> However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you. Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

Dkt. 1, at Ex. A and B. It is this wording contained in the Letters, copies of which are attached to the Complaint, about which Plaintiffs complain. *Id*.

4. The FDCPA requires debt collectors to send the consumer a written "validation" notice informing the consumer of his or her right to obtain from the debt collector verification of the debt or a copy of a judgment against the consumer by notifying the debt collector in writing, within 30 days after receipt of the notice, that the consumer disputes the debt, or any portion thereof. 15 U.S.C. § 1692g(a)(4). The FDCPA also requires the written validation notice inform the consumer of his or her right to obtain from the debt collector the name and address of the original creditor, if different from the current creditor, by notifying the debt collector in writing of such a request within the 30-day period. 15 U.S.C. § 1692g(a)(5). In this case, each Letter allegedly received by Plaintiffs was the written validation notice, and both complied with the statutory requirements to give such notices. Dkt. 1, at Ex. A and B.

5. Plaintiffs allege, albeit inaccurately, that GC Services' Letters misstated the method for disputing Plaintiffs' debts and requesting the name and address of their original creditors. Dkt. 1, at ¶¶ 20-21, 30-31, Ex. A, B. Specifically, Plaintiffs claim GC Services' Letters violated 15 U.S.C. §

1692g(a)(4) because the Letters did not "inform [the Plaintiffs], respectively, that Defendant need only mail verification of the debt, or a copy of the judgment, if any, to them if they notified Defendant, *in writing*, that they disputed their respective debts." Dkt. 1, at ¶ 30 (emphasis in original). Plaintiffs also claim GC Services' Letters violated 15 U.S.C. § 1692g(a)(5) because the Letters did not "inform [the Plaintiffs], respectively, that Defendant need only provide them the name and address of the original creditor, if different from the current creditor, if they notified Defendant of such request, *in writing*." Dkt. 1, at ¶ 31 (emphasis in original). However, while this may be a correct statement of GC Services' *minimal* obligations under the statute, it is undeniably incorrect for Plaintiffs to contend that a written communication was, *in fact*, the only means of obtaining GC Services' compliance in response to such a dispute or request from either Plaintiff or any member of the putative class. Indeed, the undisputed evidence, specifically the Declaration of Mark Schordock, submitted as Exhibit A, clearly disproves Plaintiffs' assertion of a hypothetical violation under either provision of the Act.

6. Wholly disregarding those facts, but based on those allegations, Plaintiffs have moved to certify a class under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure consisting of:

> (1) All persons with a Kentucky or a Nevada address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client," (3) between November 5, 2014 and November 5, 2015, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership.

Dkt. 22, at p. 1. As discussed herein, Plaintiffs do not have standing to bring this suit and, if they have standing, they fail in their burden to demonstrate a basis for class certification under Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

## STANDARD FOR CLASS CERTIFICATION

7. The Supreme Court has directed that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982). The Sixth Circuit has held that district courts have broad discretion in deciding whether to certify a class, but that courts must exercise that discretion within the framework of Rule 23. *C.f., Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The party seeking class certification bears the burden of establishing its right to class certification. See *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976).

8. At the outset, a party seeking class certification must establish the requisite elements necessary under Rule 23. *Id.* Even if they do so, and although a court considering class certification need not inquire into the merits of the underlying claim, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), a class action may not be certified merely on the basis of its designation as such in the pleadings. Rather "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160. See also *American Medical Systems*, 75 F.3d at 1079.

9. Here, Plaintiffs fail to satisfy their burden to show the propriety of class certification even if, *arguendo,* Plaintiffs have the requisite standing to pursue a claim at all. For example, noticeably absent from Plaintiffs' motion for class certification is any analysis of whether Plaintiffs

have proposed a readily identifiable class in which they are members. This is essential because, "[b]efore engaging in the 'rigorous analysis' required by Rule 23, the court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Chaz Concrete Co., LLC v. Codell*, 2006 U.S. Dist. LEXIS 60013, 2006 WL 2453302 (E.D. Ky. August 23, 2006) (J. Karen K. Caldwell presiding), rev'd on other grounds, 545 F.3d 407 (6th Cir. 2008) (citing *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004)). Although Rule 23 does not explicitly identify these requirements, one necessary element is that there must be a "class." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760 (3rd ed. 2006). Important elements of defining a class include: (1) specifying a particular group *that was harmed* during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner. *Id*.

10. After meeting the threshold issue of a readily identifiable class, the party seeking class certification must meet all four requisites of Rule 23(a) - numerosity, commonality, typicality, and adequacy of representation - before a class can be certified. Fed. R. Civ. P. 23(a); *American Medical Systems*, 75 F.3d at 1079. "Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b)." *American Medical Systems*, 75 F.3d at 1079 (emphasis in the original). Here, after the Court analyzes the Rule 23(a) factors, the Court should analyze Plaintiffs' motion for class certification under Rule 23(b)(3), as Plaintiffs have pled in their Complaint, Dkt. 1, ¶ 36, and their motion, Dkt. 22, p. 5.

## ARGUMENT & AUTHORITIES

**Class certification should be denied and this entire action dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing to bring suit.**

11. "Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Fallick*, 162 F.3d at 423. Thus, in this matter, before the Court analyzes whether the named Plaintiffs have satisfied the criteria of Rule 23 with respect to the absent putative class members, the Court must first determine whether Plaintiffs have standing to bring this suit for themselves. As the recent decision of the Supreme Court in *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016), makes clear, they do not.

12. A person has constitutional standing to bring a suit in federal court if, among other things, he or she has "suffered an injury in fact." *Spokeo*, 136 S. Ct. at 1547. In *Spokeo*, the plaintiff asserted he could satisfy the injury in fact requirement without alleging any concrete harm. That is, just as the Plaintiffs do in the instant case, the plaintiff in *Spokeo* maintained that his allegation of a violation of "his statutory rights" sufficed to establish injury in fact. Writing for the majority and rejecting such an assertion, Justice Alito explained that an "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1548 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997)). That is, a statutory violation alone is insufficient for purposes of establishing constitutional standing. Rather, to "establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). The *Spokeo* Court explained further that, to qualify as "concrete," an injury "must actually exist," and it must be "'real' and not 'abstract.'" *Id*. at 1548. This means that a plaintiff does not automatically satisfy the injury in fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1548. Instead, "**Article III standing requires a concrete injury even in the context of a statutory violation**." *Id*. at 1548 (emphasis added). Accordingly, a "bare procedural harm" under a federal statute, "divorced from any concrete harm," as Plaintiffs allege here, does not "satisfy the injury in fact requirement." *Id*. at 1548; see also *Khan v. Children's Nat'l Health Sys.*, 2016 U.S. Dist. LEXIS 66404, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (applying *Spokeo* to find lack of standing involving various alleged violations of statutes in connection with a data breach where plaintiff failed to show the breach caused an actual injury).

13. Just last week, following *Spokeo*, the district court in *Sartin v. EKF Diagnostics, Inc.*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016), dismissed Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA") claims under Rule 12(b)(1). *Id*. There, and similar in content, although more briefly stated, the Court found the plaintiff's only reference within his complaint "to any kind of injury appears in a single sentence, which states that defendants' failure to comply with the TCPA's requirements 'caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages.'" *Id*. To be sure, dismissal of claims alleging no more than statutory violations, as the plaintiff in *Spokeo* claimed *and as Plaintiffs assert in the case at bar*, have come quickly and consistently in light of the clear ruling based on facts similar to those rejected in *Spokeo* as creating standing. See also *Stoops v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 82380, 2016 WL 3566266, at *9 (W.D. Pa. June

24, 2016) (dismissing TCPA claims in light of *Spokeo* where plaintiff failed to plead any injury beyond a statutory violation).

14. Here, as explained in detail in GC Services' motion to dismiss for lack of subject matter jurisdiction and memorandum of law in support thereof filed on July 8, 2016, Dkt. 23, 23-1, the evidence and argument of which, consistent with Rule 10, Defendant incorporates here without imposing on the Court a full re-statement, Plaintiffs allege no more than *hypothetical*, procedural violations of a federal statute without any showing that the hypothecated violations caused Plaintiffs harm or any material risk of harm. Tellingly, and just like the plaintiff in *Sartin, Plaintiffs fail to provide any specific information in their Complaint regarding the harm*, if any, that has befallen each of the named Plaintiffs, so as to demonstrate their standing. Instead, Plaintiffs *suggest* harm from no more than the *possibility* of a violation of the FDCPA. This gap is most apparent, and the lack of concrete injury becomes undeniable as, within their own Complaint, Plaintiffs assert no more than GC Services' alleged misstatement contained in the Letters regarding the rights afforded by the FDCPA "*could* lead the least sophisticated consumer to waive or otherwise not properly vindicate her rights under the FDCPA," Dkt. 1, ¶ 33 (emphasis added). The statement of mere *potential injury* – particularly expressed as such - is not the sort of "concrete" injury necessary to seek redress in federal court. *Spokeo,* 136 S. Ct. at 1549. Accordingly, not only should Plaintiffs' motion for class certification be denied because Plaintiffs themselves lack standing, the Court should dismiss this action in its entirety for lack of subject matter jurisdiction based upon Plaintiffs' lack of standing to bring suit.

**Class certification should be denied because Plaintiffs have failed to propose a readily identifiable class in which they are members.**

15. Even if the Court finds Plaintiffs have standing to sue for themselves, this case is not, and will not be, appropriate for class treatment because Plaintiffs' proposed class definition does not contain a readily identifiable class. More specifically, in light of the clear mandate explained in *Spokeo* to demand proof of an actual, concrete injury for each and every claimant to have standing, *extensive* inquiry would be required to determine whether each alleged absent class member has an actual, concrete injury *of his or her own*, and thus standing to bring suit, a threshold prerequisite to be a member of any putative class.

16. In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). Although federal courts "do not require that each member of a class submit evidence of personal standing," a class cannot be certified if it contains members who lack standing. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006). A class "**must therefore be defined in such a way that anyone within it would have standing**." *Denney*, 443 F.3d at 264 (emphasis added).

17. The Sixth Circuit has recognized as a threshold issue implicit in Rule 23, *which Plaintiffs have wholly failed to address in their motion for class certification, reason enough for the Court to deny the motion*, that the named plaintiffs seeking certification must propose an identifiable, unambiguous class in which they are members. *In re Se. Milk Antitrust Litig.*, 2010 U.S. Dist. LEXIS 94223, *14-15 (E.D. Tenn. Sep. 7, 2010) (citing *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989)). "A class representative must be part of the class and possess the same interest **and suffer the same injury** as the class members." *Reid*, 886 F.2d at 1471 (internal quotations omitted) (emphasis added).

18. Notably, a court should not certify a class where, as here in light of the question of concrete injury, extensive factual inquires are required to determine whether individuals are members of a proposed class, and where a plaintiff could prove his own claim, but, in doing so, "not necessarily have proved anybody else's claim." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998)). Put another way, but equally compelling, is the well-settled proposition that "[a] proposed class may be deemed overly broad if it "would include *members who have not suffered harm at the hands of the Defendant and are not at risk to suffer such harm.*'" *Chaz*, 2006 U.S. Dist. LEXIS 60013, [WL] at *6 (citing *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001)) (emphasis added).

19. In the present case, numerous factual disputes concerning whether each proposed class member has suffered the requisite "concrete and particularized" harm or risk of harm to have standing to bring suit would result in subjective mini-trials of each putative class member and thus make certification improper. Moreover, Plaintiffs' proposed class definition fails to provide specificity and an objective manner of determining whether *all* the members of the proposed class have standing to bring suit.

20. Plaintiffs' purported class includes all persons with a Kentucky or Nevada address to whom GC Services mailed a letter containing the same, relevant language found in the Letters about which Plaintiffs complain. However, - and this is fatal to their motion - Plaintiffs have not alleged that *all* of the putative class members actually *received*, let alone *opened and read*,[1] the letter in question *or* that they have suffered any specific injury, let alone a "concrete and particularized" injury caused by the receipt of such a letter. Instead, Plaintiffs merely pled that, because the

---

[1] Even if the Court were to accept Plaintiffs' hypothetical theory of *possible* injury as sufficient to demonstrate standing, it could not apply to anyone who never actually read the letter.

proposed class members *may have* received, but without regard to whether they actually *opened and read*, the letters which contained language Plaintiffs contend violated the FDCPA, they are entitled to statutory damages without any allegation of suffering an actual "concrete and particularized" injury. To be sure, the *only* mention in the Plaintiffs' *entire* Complaint that Plaintiffs and the proposed class members sustained any injury at all is a wholly perfunctory and conclusory line:

> To be sure, the claims of Plaintiffs and all of the members of the class originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiffs possess the same interests and have suffered the same injuries as each member of the proposed class.

Dkt. 1, ¶ 38. Nowhere else in the entire Complaint is "injury" or "harm" mentioned, much less any description of these "same injuries" allegedly "suffered" by Plaintiffs and "each member of the proposed class."

21. Simply put, Plaintiffs' proposed class definition fails to define a class that is readily identifiable because it is impossible to ascertain who (1) actually received the letter, (2) then, actually opened the letter, (3) then, actually read the letter, and (4) for those proposed class members who did, suffered the requisite "concrete and particularized" injury to have standing to bring suit. Importantly, the only people who, in theory, *could have* suffered the requisite "concrete and particularized" injury would be those who contacted GC Services by some non-written means to dispute their debt or request the name and address of their original creditor *after* having actually received, opened, and read the letter. But, even if, *arguendo*, there exists people who fit into that narrow category, those people still *could not have suffered any injury* because, as evidenced by the attached Declaration of Mark Schordock, it was GC Services' policy to treat non-written disputes and requests received from consumers the same as written disputes and requests. See Ex. A. The difficulties inherent in identifying which of the proposed class members actually contacted GC Services by some non-written means after having received, opened, and read the letter, present

serious administrative burdens that are inconsistent with the efficiencies expected in a class action. Many of the benefits that are the hallmark of a proper class action would be lost if the Court were required to make individual factual inquiries in order to determine the members of the proposed class.

22. Where, as here, the named Plaintiffs have failed to define the class adequately, the Court need not proceed with a full Rule 23 analysis. *Edwards v. McCormick*, 196 F.R.D. 487 (S.D. Ohio 2000). The Plaintiffs' failure to establish an adequately-defined class alone is a basis on which the Court may, and should, deny certification. Nevertheless, GC Services will proceed to analyze the application of Rule 23(a) and show there is no merit in Plaintiffs' class allegations.

**Plaintiffs have failed to satisfy the numerosity requirement.**

23. Rule 23(a)(1) requires the proposed class be so numerous that joinder of all members is impracticable. This is often referred to as the numerosity requirement. A proposed class meets the numerosity requirement by demonstrating the impracticality, not the impossibility, of joinder. *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 660 (E.D. Mich. 1995). "Impracticability" depends upon all the circumstances of the case. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970). No specific minimum number of alleged class members is necessary. Instead, the appropriate inquiry is whether the plaintiff has sufficiently demonstrated the existence of the numbers of persons he purports to represent. *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666 (E.D. Ky. 1974) (J. Mac Swinford presiding). In reviewing this issue, the Court cannot rely on speculation or conclusory allegations of the proposed representatives. Instead, the Plaintiffs must "show some evidence of or reasonably estimate the number of class members." *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 781 (E.D. Mich. 1971), aff'd per curiam, 453 F.2d 1259 (6th Cir. 1971), cert. denied, 405 U.S. 978

(1972) ("Speculation cannot be used to establish that a prospective class is so numerous as to make joinder impracticable.").

24. Here, Plaintiffs have failed to meet their burden of demonstrating the number of persons they seek to represent *and who actually have standing to sue*. All of the persons referenced in Plaintiffs' motion for certification to whom GC Services mailed a letter containing the language at issue, without regard to whether those persons actually received, opened, and read the letter, and then contacted GC Services by some non-written means to dispute their debt or request the name and address of their original creditor, are disputed members of the proposed class. Movants correctly state that GC Services sent approximately 9000 such letters to addresses in Kentucky and Nevada, but they do not identify any means by which the Court may create a class of people who actually *received,*[2] *opened, and read* the letter, and then contacted GC Services by some non-written means to dispute their debt or request the name and address of their original creditor, the only means by which any putative class member could have suffered even a (legally insufficient) statutory violation, let alone the requisite actual, concrete injury necessary to have standing. As previously discussed, one of the problems with the class as defined by Plaintiffs is that it requires the Court to make individual factual inquiries to determine whether all of the proposed class members have suffered the requisite "concrete and particularized" injury to have standing to bring suit.

25. In attempting to meet the numerosity requirement, Plaintiffs state in their motion for class certification that GC Services has provided a list of the names and addresses of each of the approximately 9,000 people in Kentucky and Nevada who were mailed the letters in question. Dkt. 22, p. 5. However, neither Plaintiffs nor GC Services can identify who actually received, opened

---

[2] Plaintiffs suggest that their proposed class excludes persons whose letters were "returned as undeliverable to GC Services," Dkt. 22, p. 1, but they fail to show that such a definition will exclude actual non-recipients, let alone the potentially thousands of people who may have received the letter but never opened or read it, the only way they could have been "injured" based on Plaintiffs' allegations.

and read the letter in question, let alone who suffered any injury thereby from then contacting GC Services by a non-written means, since only people who wished to dispute their debt or request the name and address of their original creditor would be affected by the language of which Plaintiffs complain. The numerosity requirement has not been met because, as explained *supra*, Plaintiffs have wholly failed to allege that any member, much less all, of the proposed class has received, opened and read the letter or that any who did suffered the requisite "concrete and particularized" injury to have standing to bring suit. For this reason, the Court should find that Plaintiffs have failed to meet the numerosity requirement with regard to the proposed class.

**Plaintiffs have failed to satisfy the commonality requirement.**

26. Rule 23(a)(2) provides that, in order for a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Sixth Circuit has held that in order to satisfy the commonality requirement "there need only be a single issue common to all members of the class." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). However, the existence of *any* common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What is necessary is a common issue the resolution of which will advance the litigation." *Sprague v. General Motors*, 133 F.3d 388, 397 (6th Cir. 1998). Here, Plaintiffs assert the commonality requirement is satisfied because the question common to all members of the proposed class is whether the letters at issue, which were mailed to the proposed class, regardless of whether, like the Plaintiffs, any potential class member actually received, opened, and read the letter, violated the FDCPA. Dkt. 22, pp. 9-10. Regardless of the fact that Plaintiffs would pose this single question, it is clear that even an affirmative answer would not advance the litigation because the question posed ignores the overarching problem as to whether each proposed class member suffered the requisite "concrete and

particularized" injury as a result of contacting GC Services by some non-written means to dispute his or her debt or request the name and address of their current creditor after having received, opened, and read the subject letter. It is only with individualized inquiry that the standing of each proposed class member can be determined. It is also obvious that questions relevant to establishing whether each putative plaintiff suffered the requisite "concrete and particularized" injury to have standing would necessarily predominate over any common issues, thus negating the requirement of Rule 23(b)(3). Accordingly, the commonality requirement has not been met.

**Plaintiffs have failed to satisfy the typicality requirement.**

27. Rule 23(a)(3) requires that the claims of the representatives be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality limits the class claims to those fairly encompassed by the named Plaintiffs' claims. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). In *In re Am. Med. Sys., Inc.*, the Sixth Circuit stated:

> Typicality determines whether a sufficient relationship exists between the *injury* to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's *injury* arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.

75 F.3d 1069, 1082 (6th Cir. 1996) (emphasis added). Typicality is required so that the class representative may "advance the interest of the entire class." "Under the commonality prong, a court must ask whether there are sufficient factual or legal questions in common among the class members' claims to make class certification economical and otherwise appropriate. In contrast, under the typicality prong, a court must ask whether, despite the presence of common questions, each class member's claim involves so many distinct factual or legal questions as to make class certification inappropriate." In other words, commonality focuses on similarities, while typicality

focuses on differences. See *Marquis v. Tecumseh Products Co.,* 206 F.R.D. 132, 158, 159 (E.D. Mich. 2002).

28. In this case, the typicality requirement fails for reasons similar to those discussed *supra* with respect to the commonality requirement. In the Complaint, the named Plaintiffs wholly fail to allege an injury, much less a "concrete and particularized" injury. As emphasized above, the *only* mention in the *entire* Complaint that Plaintiffs and the proposed class members sustained *any* injury at all is the one, empty sentence, "To be sure, the claims of Plaintiffs and all of the members of the class originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiffs possess the same interests and have suffered the same injuries as each member of the proposed class." Dkt. 1, ¶ 38. Even Plaintiffs' motion for class certification glosses over the typicality requirement, steering clear of any discussion related to injury to the named Plaintiffs or the proposed class. Dkt. 22, pp.10-11.

29. If the named Plaintiffs do not make known the injuries they allegedly sustained as a result of GC Services' conduct, which they have not, how can the typicality prong of class certification be evaluated? In other words, without knowing Plaintiffs' alleged injuries, how can it be determined whether those injuries arose from or are directly related to GC Services' alleged, wrongful conduct to the proposed class, including the named Plaintiffs? It cannot be done. Plaintiffs have failed to satisfy the typicality requirement.

**Plaintiffs have failed to satisfy the adequacy requirement.**

30. Rule 23(a)(4) permits a class to be maintained only if "the representative parties will fairly and adequately protect the interests of the class." The Sixth Circuit has adopted a two-part analysis in addressing this requirement. *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). This test requires that the representatives: (1) have common interests with unnamed

members of the class; and (2) will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 524-25. The first part of this requirement (i.e., that the named plaintiffs have common interests with the unnamed plaintiffs) has been addressed in the two previous sections of this memorandum. As discussed *supra*, Plaintiffs do not meet this requirement.

**Plaintiffs have failed to satisfy the requirements of Rule 23(b)(3).**

31. Plaintiffs seek class certification under Rule 23(b)(3). Dkt. 1, ¶ 36; Dkt. 22, p. 5. Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues. *American Medical Systems*, 75 F.3d at 1084.

32. As discussed *supra* in the section covering commonality, individual questions regarding the proposed class members' standing to bring suit overwhelm any questions common to the class, thus defeating class certification. In this case, in order to have standing, an individual would have to prove he or she suffered the requisite "concrete and particularized" injury as a result of receiving, opening, and reading one of the subject letters, and, then, contacting GC Services by a non-written means to dispute their debt or request the name and address of their original creditor. Plaintiffs allege they and each proposed class member have somehow suffered what can be best described as an abstract injury as a result of receiving a letter from GC Services which did not contain language explaining that in order to receive verification of their debt, or a copy of a judgment, their dispute of the debt had to be in writing, and that in order to receive the name and address of their original creditor, such a request had to be in writing. However, it is certainly

conceivable some of the 9,000+ proposed class members upon receiving the subject letter threw it away unopened, just as some may have *written* to GC Services to dispute their debt, or request the name and address of the original creditor, and received from GC Services verification of the debt, a copy of a judgment, and/or the name and address of their original creditor. Thus, some proposed class members may not have suffered any injury and, therefore, not have standing. Moreover, the proposed class members with standing cannot be readily identified absent an addressee by addressee review.

33. In this case, individualized proof of the action or inaction of each proposed class member upon his or her receipt of the subject letter from GC Services is necessary to determine whether he or she suffered the requisite "concrete and particularized" injury to have standing to bring suit. When such individualized proof of standing is involved, it eliminates the efficiencies associated with adjudicating claims on a class-wide basis. Accordingly, individual issues heavily predominate over any common issues that may exist, making this action inappropriate for certification under Rule 23(b)(3).

**If the Court grants Plaintiffs' motion for class certification, the class should be expanded to a nationwide class, or in the alternative, encompass all proposed class members across all the pending lawsuits filed by Plaintiffs' counsel against GC Services involving the letters at issue here.**

34. The letters at issue in this case were mailed to consumers across the country. On April 4, 2016, five months after this case was filed, Plaintiffs' counsel filed a lawsuit against GC Services currently pending in the Middle District of Florida which involves the letters at issue here, and is essentially identical to the issues in this case. The case is styled 8:16-cv-803-JSM-TGW; *Dickens v. GC Services Limited Partnership*. 15 U.S.C. § 1692k(a) states in relevant part:

> (a) **Amount of damages**. Except as otherwise provided by this section, any debt collector who fails to comply with any provision

of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)
   (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

   (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

35. Under 15 U.S.C. § 1692k(a), Plaintiffs' counsel should not be permitted to bring serial, piecemeal litigation against GC Services for the same, alleged course of conduct in the various federal districts across the country. Accordingly, if the Court grants Plaintiffs' motion for class certification, the class should be expanded to a nationwide class, or in the alternative, encompass all the proposed class members across all the pending lawsuits filed by Plaintiffs' counsel against GC Services involving the letters at issue here, including *Dickens v. GC Services Limited Partnership*.

### RELIEF REQUESTED

36. For these reasons, Defendant, GC Services Limited Partnership, respectfully requests this Court deny Plaintiffs' motion for class certification and appointment of class counsel. In the alternative, if the Court grants Plaintiffs' motion, GC Services respectfully requests this Court expand the proposed class to a nationwide class or, in the alternative, expand the class to include all the proposed class members across all the pending lawsuits filed by Plaintiffs' counsel against GC Services involving the letters at issue here, including *Dickens v. GC Services Limited Partnership*.

July 14, 2016                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ William S. Helfand*
William S. Helfand
24 Greenway Plaza, Ste. 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)
Bill.Helfand@lewisbrisbois.com
Admitted *Pro Hac Vice*
ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has this date, July 14, 2016, electronically filed **Defendant, GC Services Limited Partnership's, Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who have made an appearance in this case and as follows:

Shireen Hormozdi
Attorney at Law
1770 Indian Trail Lilburn Rd.
Ste. 175
Norcross, GA 30093
shireen@norcrosslawfirm.com

James L. Davidson
Greenwald Davidson Radbil PLLC
5550 Glades Rd., Ste. 500
Boca Raton, FL 33431
jdavidson@gdrlawfirm.com

                                                  */s/ William S. Helfand*
                                                  William S. Helfand