UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WILBUR MACY and PAMELA J. STOWE,                                              Plaintiffs,

v.                                                      Civil Action No. 3:15-cv-819-DJH

GC SERVICES LIMITED PARTNERSHIP,                                          Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiffs Wilbur Macy and Pamela Stowe allege that Defendant GC Services Limited Partnership violated the Fair Debt Collection Practices Act by sending them debt-collection letters that did not adequately advise them of their rights under the Act.  (Docket No. 1)  GC Services has moved for dismissal, first arguing that Macy and Stowe's complaint fails to state a claim upon which relief can be granted (D.N. 12) and later asserting that the Court lacks subject matter jurisdiction over the case because the plaintiffs do not have standing to pursue their claims (D.N. 23).  Meanwhile, the plaintiffs moved to declare GC Services' offers of judgment ineffective.[1]  (D.N. 14)  The Court concludes that it has subject matter jurisdiction over the plaintiffs' claims and that the complaint asserts plausible claims for relief.  The motions to dismiss will therefore be denied.  In addition, the offers of judgment will be declared ineffective because they represent an impermissible attempt by GC Services to "pick off" Macy and Stowe.

## I.   BACKGROUND

Macy and Stowe each received a letter from GC Services notifying them that their Synchrony Bank credit-card accounts had been referred to GC Services for collection.  (D.N. 1, PageID # 4-5)  After stating the debt balance, the letters advised:

---

[1] The plaintiffs' motion to certify a class (D.N. 22) will be addressed in a later opinion.

If you dispute this balance or the validity of this debt, please contact us.  If you do not dispute this debt within 30 days after you receive this debt, we will assume the debt is valid.

However, if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you.  Or, if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client, Synchrony Bank.

(*Id.*, PageID # 5 ¶ 27 (emphasis removed); *id.*, PageID # 6 ¶ 29)

According to the plaintiffs, this notice was deficient because it failed to inform them that GC Services was only obligated to provide the additional debt and creditor information if they disputed their debts in writing.  (*Id.*, PageID # 6 ¶¶ 30-31)  On behalf of themselves and others similarly situated, Macy and Stowe assert violations of the two subsections of the FDCPA that impose the in-writing requirement.  (*Id.*, PageID # 9-10)  They seek statutory damages and injunctive relief.  (*Id.*, PageID # 11)

## II.   ANALYSIS

Because the Court may not proceed in the absence of subject matter jurisdiction, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), its analysis begins with GC Services' second motion to dismiss.

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court's jurisdiction is limited to "Cases" and "Controversies."  U.S. Const. Art. III, § 2, cl. 1.  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  GC Services contends that the plaintiffs' complaint fails to satisfy this element.  (D.N. 23)  Its argument rests on a recent Supreme Court decision, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

2

In *Spokeo*, the Court vacated the Ninth Circuit's decision that the plaintiff, Robins, had standing to pursue his claim under the Fair Credit Reporting Act, finding that the court of appeals had neglected to consider whether Robins's alleged injury was "concrete." *Id.* at 1548. The Court reiterated its earlier pronouncements that "the 'irreducible constitutional minimum' of standing" requires the plaintiff to have "suffered an injury in fact." *Id.* at 1547 (quoting *Lujan*, 504 U.S. at 560-61). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560). A "concrete" injury is one that "actually exist[s]," *id.* at 1548 (citing *Black's Law Dictionary* 479 (9th ed. 2009)), though an injury need not be tangible to be concrete. *Id.* at 1549. The concreteness requirement may be satisfied by "the risk of real harm." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013)).

"Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48 (quoting *Raines*, 521 U.S. at 820 n.3). It may, however, "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578). In other words, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)). But this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island*

3

*Institute*, 555 U.S. 488, 496 (2009)); *see id.* at 1550 ("A violation of one of the FCRA's procedural requirements may result in no harm."). Thus, in cases involving alleged procedural violations, the Court must determine "whether the particular procedural violations alleged in th[e] case entail a degree of risk sufficient to meet the concreteness requirement."[2] *Id.* at 1550.

The FDCPA provides that "any debt collector who fails to comply with any provision of [the Act] with respect to any person is liable to such person" for actual or statutory damages. 15 U.S.C. § 1692k(a). In this case, Macy and Stowe allege violations of § 1692g(a)(4) and (5). (D.N. 1, PageID # 6 ¶¶ 30-31) Pursuant to those subsections, a debt collector must, "within five days after the initial communication with a consumer in connection with the collection of any debt, . . . send the consumer a written notice containing" certain information, including the following:

> (4)    a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period [after receipt of the notice] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

---

[2]    Plaintiffs insist that *Spokeo* did not alter the standing inquiry and that *Beaudry v. Telecheck Services, Inc.*, 579 F.3d 702 (6th Cir. 2009)—a pre-*Spokeo* case in which the Sixth Circuit concluded that the plaintiff had standing to assert violations of the Fair Credit Reporting Act—is therefore controlling. (*E.g.*, D.N. 24, PageID # 207) Yet the analysis employed in *Beaudry* was precisely the one found inadequate by the *Spokeo* Court: the Ninth Circuit's conclusions, based on *Beaudry*, that Robins was "among the injured" and suffered "individual, rather than collective, harm" established only that his injury was particularized, leaving the question of concreteness unanswered. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014) (quoting *Beaudry*, 579 F.3d at 707)), *rev'd*, 136 S. Ct. 1540 (2016); *see Spokeo*, 136 S. Ct. at 1548 ("Both of these observations concern particularization, not concreteness.") (citing *Robins*, 742 F.3d at 413). In any event, the Sixth Circuit has more recently recognized, as did the *Spokeo* Court, that although Congress may create new legal rights by statute, a plaintiff must be able to show that she suffered "a concrete, particularized, and personal injury . . . as a result of the violation of the newly created legal rights" in order to have Article III standing. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015)).

(5)     a statement that, upon the consumer's *written* request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added).  The statute further provides that

> [i]f the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.  Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.

15 U.S.C. § 1692g(b) (emphasis added).  Thus, a debt collector's obligation to cease collection efforts and provide additional information to the debtor arises only if the debtor submits a written dispute or request.  *See id.*; *see also Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) ("The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute.").

The risk to be measured in this case, then, is the risk that a consumer will waive FDCPA protections by disputing a debt orally instead of in writing.[3]  *See Spokeo*, 136 S. Ct. at 1550.

---

[3] In a recent unpublished decision, the Eleventh Circuit concluded that a violation of the FDCPA's disclosure requirements results in injury to a consumer's "right to information" under the Act.  *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (per curiam) ("[T]hrough the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.").  The Court does not share the *Church* panel's expansive reading of *Spokeo*.  *Cf. Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at *6 n.7 (E.D.N.Y. Aug. 2, 2016) (declining to follow *Church* and rejecting "the view that *Spokeo* established the proposition that *every* statutory violation of an 'informational' right 'automatically' gives rise to standing" (citing *Spokeo*, 136 S. Ct. at 1549)).

This risk is substantial: "[I]f a consumer contests a debt by telephone rather than in writing, the consumer will inadvertently lose the protections for debtors set forth in the FDCPA; the debt collection agency would be under no obligation to verify the debt and cease all collection efforts as required by § 1692g(b)." *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 845 (E.D. Va. 2011) (alteration in original) (quoting *Withers v. Eveland*, 988 F. Supp. 942, 947 (E.D. Va. 1997)).   It does not matter whether such a waiver actually occurred; rather, for purposes of § 1692g(a), the relevant question is whether the letter "effectively conveys a notice of rights to the least sophisticated debtor." *Savage v. Hatcher*, 109 F. App'x 759, 762 (6th Cir. 2004) (citing *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)).

Under these standards, the Court finds Plaintiffs' complaint to be sufficient.  "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'" that the injury-in-fact requirement is met.  *Spokeo*, 136 S. Ct. at 1547 (omission in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Here, Macy and Stowe allege that GC Services violated subsections (a)(4) and (5) by sending them notices that failed to mention the in-writing requirement.  (D.N. 1, PageID # 6 ¶¶ 30-31)  As a result of this omission, they claim, the least sophisticated debtor might make an oral request instead, thereby waiving the protections of subsection (b).  (*See id.*, PageID # 6-7)  The complaint thus adequately alleges injury in fact, and plaintiffs have standing to pursue their claims.  *See Spokeo*, 136 S. Ct. at 1550.  Having satisfied itself that subject matter jurisdiction exists, the Court turns to the remaining motions.

### B.      Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true.  *Id.*   A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss.  *Id.* at 679.

In its 12(b)(6) motion, GC Services argues that by omitting the in-writing requirement from its dunning letters, it was actually granting Macy and Stowe rights *beyond* those conferred by the FDCPA.  (*See* D.N. 12-2)  It points to a series of cases in which courts have found that a debt collector does not violate the FDCPA by expanding debtors' rights.  (*See id.*, PageID # 79 (citing cases))  None of those cases involved omission of the in-writing requirement, however, and each is otherwise distinguishable.

The case upon which GC Services relies most heavily, *Warran v. Smith Debnam Narron Drake Saintsing & Myers, LLP*, No. 7:10-CV-71-BO, 2011 WL 10858230 (E.D.N.C. Apr. 19, 2011), involved an explicit expansion of rights by the debt collector: the plaintiffs received a letter stating that they would have forty-five days to dispute the validity of the debt (as opposed to the thirty-day period provided by statute).  *See id.* at *1.   The court rejected the plaintiffs' contention that the thirty-day deadline set by the FDCPA was a ceiling as well as a floor, *id.* at *2, and found no violation of § 1692g(a) given that "nothing in the [d]efendants' letter c[ould] be read by even the least sophisticated consumer to apply *less than* a 30 day period for verification or dispute of the debt." *Id.* at *4.

Likewise, the letter at issue in *Roudebush v. Collecto, Inc.*, No. 1:03-CV-1126 RLY-WTL, 2004 WL 3316168 (S.D. Ind. Nov. 12, 2004), contained an express statement granting rights beyond those set out in the FDCPA, informing the plaintiff that she "ha[d] the right to make a written or oral request that telephone calls regarding [her] debt not be made to [her] at [her] place of employment." *Id.* at *5. Roudebush argued that the letter was misleading because the FDCPA bars a debt collector from calling a debtor at work if it "'knows or has reason to know' that the employer prohibits such contact"; no request by the debtor is required. *Id.* (citing § 1692c(a)(3)). The court found, however, that the letter exceeded the statutory requirements "by allowing for *any* debtor to refuse calls at work for any reason." *Id.* (emphasis added). Additionally, the court observed that the debt collector had no obligation under the FDCPA to inform debtors of their right not to be contacted at work if their employers prohibit it. *See id.*

The remaining cases cited by GC Services involved successive validation notices. *See Paige v. Waukesha Health Sys., Inc.*, No. 12-C-0601, 2013 WL 3560944, at *9 (E.D. Wis. July 11, 2013); *Young v. G.L.A. Collection Co.*, No. 1:11-cv-489-WTL-MJD, 2011 WL 6016650, at *3 (S.D. Ind. Dec. 1, 2011); *Arend v. Total Recovery Servs., Inc.*, No. 05-CV-3064 (DLI)(JMA), 2006 WL 2064977, at *3 (E.D.N.Y. July 24, 2006); *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL 594502, at *2-3 (S.D.N.Y. Mar. 25, 2004); *DiRosa v. N. Shore Agency, Inc.*, 56 F. Supp. 2d 1039, 1039-40 (N.D. Ill. 1999). In each of those cases, the debt collector had sent an initial letter advising the debtor of the thirty-day period for disputing the debt's validity, followed by one or more additional notices that also gave thirty-day deadlines. *See, e.g.*, *Brenker*, 2004 WL 594502, at *2. Because the initial notices complied with the statute and nothing in the subsequent notices diminished the debtors' rights, the later notices did not violate § 1692g. *See, e.g.*, *Young*, 2011 WL 6016650, at *3 (second validation notice "d[id] not

8

in any way hamper the unsophisticated debtor's exercise of her right to request validation of the debt[; e]ither the debtor would exercise her rights by requesting validation during the first 30-day period, during the second, or not at all").

Like the letters in *Warran* and *Roudebush*, the successive validation notices in the above-cited cases contained language that clearly offered rights to the debtors beyond those guaranteed by the FDCPA.  In contrast, the letters Macy and Stowe received did not expressly state the additional right that GC Services now claims it was giving them.[4]  Rather than advise the plaintiffs that they could contact GC Services "*orally or in writing*," as GC Services contends (D.N. 12-2, PageID # 79), the letters merely stated that if the debtor "dispute[d]" the debt or "request[ed]" the creditor's name and address, GC Services would provide the required information.  (D.N. 1, PageID # 5 ¶ 27; *id.*, PageID # 6 ¶ 29)  At this stage of the litigation, the Court declines to find Plaintiffs' claims insufficient based on GC Services' after-the-fact assertion that an expansion of rights was implied.

Moreover, it is irrelevant that the plaintiffs do not allege that GC Services failed to honor an oral request (*see* D.N. 12-2, PageID # 80); a debt collector has no "statutory duty to verify the debt . . . unless and until the debtor disputes the debt in writing."  *Bicking*, 783 F. Supp. 2d at 845 ("Nor does it matter whether Defendants would have honored an oral request.").  And as explained above, the plaintiffs' alleged injury is the risk of waiving their statutory rights.  *See Spokeo*, 136 S. Ct. at 1550.  The pertinent question, for purposes of a motion to dismiss, is whether Macy and Stowe have alleged facts plausibly suggesting that the least sophisticated consumer would have been confused by the notice they received from GC Services.  *See Bicking*,

---

[4]  *Roudebush* is further distinguishable in that the court there did not consider whether the purported expansion of rights was consistent with § 1692g(a), the section at issue here.  *See* 2004 WL 3316168, at *5 (concluding that defendant debt collector was "not in violation of § 1692c(a)(3)").

783 F. Supp. 2d at 845 (citing *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 503 (7th Cir. 2008)).  The Court concludes that they have.

GC Services also argues that injunctive relief is not available under the FDCPA.  (*See* D.N. 12-2, PageID # 81)  As both sides acknowledge, this is an issue as yet unresolved by either the Supreme Court or the Sixth Circuit.  *See Hrivnak v. NCO Portfolio Mgmt.*, 719 F.3d 564, 570 (6th Cir. 2013).  The weight of authority suggests that individual FDCPA plaintiffs may not obtain injunctive relief.  *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 n.1 (2d Cir. 2012) (noting that "every federal appeals court to have considered the question has held that" the FDCPA does not authorize injunctive relief to private litigants).  However, as Macy and Stowe point out, many courts have certified FDCPA classes pursuant to Rule 23(b)(2), which applies where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  (*See* D.N. 15, PageID # 100-02)  The issue appears to be moot here, however, as the plaintiffs do not seek certification under Rule 23(b)(2). (*See* D.N. 22 (seeking certification under Rule 23(b)(3)))  Thus, the Court need not decide whether their request for an injunction is proper.

### C.     Motion to Declare Offer of Judgment Ineffective

Macy and Stowe ask that the Court declare GC Services' December 28, 2015 offers of judgment ineffective, arguing that the offers represent "a procedural ploy designed to shirk the requirements of Rule 23" because they do not provide relief for absent class members.  (D.N. 14-1, PageID # 62)  According to Plaintiffs, GC Services is attempting to "pick off" the class representatives—Macy and Stowe—so that they will not pursue a class action.  (*Id.*, PageID #64)  GC Services maintains that its offers of judgment are proper and that it is entitled to the "cost-shifting benefits" associated with such offers.  (D.N. 16, PageID # 105)

Pursuant to Federal Rule of Civil Procedure 68, a defendant may make an offer of judgment "on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). A plaintiff who does not accept an offer of judgment within fourteen days becomes liable for "costs incurred after the offer was made" in the event that the ultimate judgment is less favorable than the rejected offer. Fed. R. Civ. P. 68(d). If the offer is accepted, the offer and notice of acceptance, as well as proof of service, are filed with the court, and "[t]he clerk must then enter judgment." Fed. R. Civ. P. 68(a). The "exclusive purpose" of Rule 68 is "to promote voluntary cessation of litigation by imposing costs on plaintiffs who spurn certain settlement offers." *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1536 (2013) (citing *Marek v. Chesny*, 473 U.S. 1, 5 (1985)).

"Settlement of a plaintiff's claims moots an action," and a named plaintiff's acceptance of an offer of judgment may affect class claims.[5] *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (quoting *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992)). Where the named plaintiff's claim is mooted prior to class certification, "dismissal of the action is required." *Id.* (citations omitted). This creates an incentive for defendants seeking to avoid class litigation: pick off named plaintiffs with early offers of judgment, and the entire case will be dismissed. *See Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 707 (6th Cir. 2009) (concern about the picking-off of named plaintiffs "arise[s] when a defendant attempts to eliminate the named plaintiffs at the outset of the class action by conveying an offer of judgment or settlement with the named plaintiffs before or immediately after a class certification motion is filed"). As the Southern District of Ohio has explained,

---

[5] The Supreme Court recently held that "an *un*accepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (emphasis added). Thus, a named plaintiff's individual claim "retain[s] vitality during the time involved in determining whether the case c[an] proceed on behalf of a class." *Id.*

> offers of judgment prior to class certification pit the self interests of named plaintiffs against the interests of the class as a whole. . . . Courts have reasoned that putative class representatives cannot be forced to accept Rule 68 offers because contrary to their duty to litigate the case in the best interests of the class, the putative representatives would be compelled "to weigh [their] own interest in avoiding personal liability for costs under Rule 68 against the potential recovery of the class."

*Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008) (alteration in original) (quoting *Zeigenfuse v. Apex Asset Mgmt.*, 239 F.R.D. 400, 402 (E.D. Pa. 2006)).   In cases where picking off is suspected, courts may declare the offer of judgment ineffective, thereby relieving named plaintiffs of this conflict.  *See, e.g.*, *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 723 F. Supp. 2d 1020, 1030-31 (N.D. Ohio 2010).

The Court finds that to be the appropriate course here.  GC Services made its offers of judgment less than two months after this purported class action was filed—before it responded to the complaint and before Plaintiffs sought certification of a class.  (D.N. 14-1, PageID # 63; *see* D.N. 1; D.N. 22; D.N. 16, PageID # 105)  The timing of the offers suggests that GC Services sought to pick off Macy and Stowe in order to avoid potential liability to a class.  *See Pettrey*, 584 F.3d at 707.  Plaintiffs should not be forced to choose between accepting an offer and abandoning the interests of the class, on one hand, and rejecting it and bearing the risk of substantial litigation costs, on the other.  *See Stewart*, 252 F.R.D. at 386.  Accordingly, the Court will declare the offers of judgment ineffective.

## III.   CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     GC Services' motion to dismiss for lack of subject matter jurisdiction (D.N. 23) is

**DENIED**.

(2)     GC Services' motion to dismiss for failure to state a claim (D.N. 12) is **DENIED**.

(3)     Plaintiffs' motion to declare the offer of judgment ineffective (D.N. 14) is

**GRANTED**.

September 29, 2016

**David J. Hale, Judge**
**United States District Court**