UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WILBUR MACY and PAMELA J. STOWE,
on behalf of themselves and others similarly
situated,                                                                              Plaintiffs,

v.                                                          Civil Action No. 3:15-cv-819-DJH-CHL

GC SERVICES LIMITED PARTNERSHIP,                                           Defendants.

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

Plaintiffs Wilbur Macy and Pamela J. Stowe, on behalf of themselves and others similarly situated, allege that Defendant GC Services Limited Partnership violated the Fair Debt Collection Practices Act by sending them debt-collection letters that did not accurately convey their rights under the Act. (Docket No. 1) The parties have reached a settlement to resolve this class action, and Plaintiffs seek preliminary approval of that settlement. (D.N. 74) The motion for preliminary approval is unopposed. (*See id.*) Nevertheless, the Court must examine the proposed settlement before notice of the proposal is sent to the class. *See* Fed. R. Civ. P. 23(e)(1)(B); *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001). The Court held a preliminary fairness hearing on November 8, 2019. (*See* D.N. 82) After careful consideration, the Court will preliminarily approve the parties' settlement.

## I.

The Court previously certified the following class:

(1) All persons with a Kentucky or Nevada address, (2) to whom GC Services Limited Partnership mailed an initial communication that stated: (a) "if you do dispute all or any portion of this debt within 30 days of receiving this letter, we will obtain verification of the debt from our client and send it to you," and/or (b) "if within 30 days of receiving this letter you request the name and address of the original creditor, we will provide it to you in the event it differs from our client,"

1

(3) between November 5, 2014 and November 5, 2015, (4) in connection with the collection of a consumer debt, (5) that was not returned as undeliverable to GC Services Limited Partnership[.]

(D.N. 36, PageID # 361) The class-certification decision, as well as the Court's conclusion that Plaintiffs have Article III standing, was affirmed by the Sixth Circuit Court of Appeals. *Macy v. GC Servs. L.P.*, 897 F.3d 747 (6th Cir. 2018). Because the case was stayed pending appeal, class members have not yet received notice of the action. (*See* D.N. 59, PageID # 538)

GC Services has identified 8,902 class members, including Macy and Stowe. (D.N. 74, PageID # 594) Under the proposed settlement, class members who do not opt out would automatically receive $10.00 each, while the named plaintiffs would each receive $2,500 ($1,000 in statutory damages and $1,500 as an "incentive award"), plus fees and costs. (D.N. 74, PageID # 594-95) In addition, GC Services would "cease using the form of debt collection letter at issue" in this case. (*Id.*, PageID # 594) The agreement contemplates an award of $220,000 in fees to class counsel, and GC Services has agreed not to oppose the motion for attorney fees. (D.N. 74-1, PageID # 625-26) As discussed below, recent changes to Federal Rule of Civil Procedure 23 require careful scrutiny of these provisions before the settlement is preliminarily approved.

**II.**

The Court may approve a settlement only after determining that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). At the preliminary stage, the Court "must make a preliminary determination" of these factors. *Manual for Complex Litigation (Fourth)* § 21.632 (2004). The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon "the parties' showing that the court will likely be able to" approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2). Fed. R. Civ. P.

23(e)(1)(B)(i); *see* Newberg on Class Actions § 13:10. That standard requires the Court to consider whether

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors, which are also part of the 2018 amendments to Rule 23, are not meant "to displace any factor" previously relied on by the courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. The rule largely encompasses the factors that have been employed by the Sixth Circuit:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016) [*Vassalle II*] (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition to the seven factors listed above, the Sixth Circuit has "looked to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 756 (6th Cir. 2013) [*Vassalle I*] (quoting *Williams*, 720 F.2d at 925).

The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). Since the amendment, courts within the Sixth Circuit have been applying both sets of factors. *See,*

*e.g.*, *Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 U.S. Dist. LEXIS 143692, at *18 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 U.S. Dist. LEXIS 11826 (E.D. Ky. July 17, 2019)). In light of the substantial overlap between the two sets, they can easily be considered together.

A. **Adequate Representation/Amount of Discovery/Opinions of Class Counsel and Representatives**

The Court previously found that Macy and Stowe were adequate class representatives and that their counsel was qualified (*see* D.N. 36, PageID # 353-56), and there is no indication that either class counsel or the class representatives have failed to adequately represent the class since that time. Macy and Stowe rejected GC Services' offer of judgment early in the case, instead opting to pursue their claims on behalf of the entire class. Through those efforts, they secured a settlement in which each class member would recover $10.00. They believe this settlement to be fair, reasonable, and adequate, as does class counsel, who has extensive experience in similar litigation. (*See* D.N. 74, PageID # 616-17; D.N. 74-1, PageID # 610) And the settlement was reached after substantial discovery and motion practice (*see* D.N. 74, PageID # 600), giving the class representatives and counsel "a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp 2d 985, 1015 (S.D. Ohio 2001)). These factors weigh in favor of preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(A); *Pelzer*, 655 F. App'x at 359.

B. **Arm's-Length Negotiations/Risk of Fraud or Collusion**

There is no evidence of fraud or collusion here. The procedural posture of the litigation indicates that "the agreement arose out of arms-length, noncollusive negotiations." *Newberg on Class Actions* § 13:14. This case has been pending for four years, with extensive motion practice

and discovery during that time, as well as an interlocutory appeal. *See id.* ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length."). The fact that the settlement was reached through mediation likewise suggests "an absence of collusion." *Id.* These factors therefore also weigh in favor of preliminary approval.

**C.     Adequacy of Relief**

   **1.     Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

Although this case is not particularly complex, the parties have already invested substantial time and money litigating it, and proceeding to trial would significantly increase the required investment. According to Plaintiffs, GC Services "intended to renew its motion to compel arbitration" following appeal of the certification and standing issues, and it would have appealed any unfavorable ruling as to arbitration; if unsuccessful on that front, it would have sought summary judgment. (D.N. 74, PageID # 599) And had the case proceeded to trial, GC Services would have "argu[ed] that statutory damages should be discounted substantially."[1] (*Id.*) Thus, at each stage of the litigation, Plaintiffs would have faced opposition and uncertainty. Even if they had prevailed at trial, they might have been awarded only nominal damages. In other words, their likelihood of success on the merits—or of substantial recovery—is unclear. Thus, these factors suggest that settlement is appropriate.

---

[1] GC Services might have pursued its earlier argument that the letter it sent to debtors actually expanded their rights beyond the FDCPA's protections. (*See* D.N. 29, PageID # 303 (declining at motion-to-dismiss stage "to find Plaintiffs' claims insufficient based on GC Services' after-the-fact assertion that an expansion of rights was implied"))

5

### 2. Method of Distribution

The proposed settlement does not entail a complicated claims or distribution process; any class member who does not opt out will be mailed a check for $10.00. (*See* D.N. 74-1, PageID # 622) The Class Administrator will take several steps before that point to ensure that class members' addresses are up to date. (*See id.*, PageID # 622-23) And unclaimed funds—which should be minimal, given the automatic-distribution and address-updating provisions in the agreement—would not revert to GC except to cover expenses of settlement administration, "with the remainder paid to Legal Aid Society of Louisville as a *cy pres* recipient." (D.N. 74-1, PageID # 622) There thus does not appear to be an attempt to benefit GC Services by restricting class members' recovery. *See* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 19-20 (3d ed. 2010) (identifying restrictions on claims and reversion of unclaimed funds as red flags that settlement may be unfair or collusive).

### 3. Attorney Fees

The attorney fees contemplated by the settlement agreement are somewhat troubling. First, the agreement contains a clear-sailing provision under which GC Services agrees not to oppose Plaintiffs' motion for attorney fees. (D.N. 74-1, PageID # 625) Though such provisions are not "unlawful per se, . . . their inclusion gives the district court 'a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 291 (6th Cir. 2016) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)). The parties further agree that "[f]or the limited purpose of seeking a fee award, the Class Representatives and the Class will be considered the prevailing party in this litigation" and that Plaintiffs will request

$220,000 in attorney fees.[2] (*Id.*, PageID # 626) This figure is not inherently unreasonable; however, it represents approximately sixty-five percent of the total settlement amount—significantly higher than the twenty-to-thirty-percent range typical in class-action settlements.[3] *See Dick v. Sprint Commc'ns Co.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (citing *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 832 (E.D. Mich. 1998)).

The Sixth Circuit has identified six factors to be considered when determining an appropriate fee amount in the class-action context:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Gascho*, 822 F.3d at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). The Court does not doubt class counsel's "professional skill and standing." *Id.* Moreover, the Court recognizes that "[a]ttorney fee awards under fee-shifting statutes often bear little or no relation to the actual or statutory damages recovered under those statutes" and that "[t]his result is sanctioned because . . . fee[-]shifting statutes 'enhance enforcement of important civil rights, consumer protection, and environmental policies.'" *Perez v. Perkiss*, 742 F. Supp. 883, 891 (D. Del. 1990) (quoting *Student Pub. Interest Research Grp. v. AT&T Bell Lab.*, 842 F.2d 1436, 1449

---

[2] The FDCPA provides for an award of attorney fees "in the case of any successful action to enforce" the liability imposed by the Act. 15 U.S.C. § 1692k(a)(3).

[3] This figure takes into account the estimated costs of administering the settlement, which will also be borne by GC Services and are considered part of the "[t]otal [b]enefit to the class." *Gascho*, 822 F.3d at 282 (explaining that for purposes of the percentage-of-the-fund analysis, "[a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members[' and] the attorney's fees and may include costs of administration"). Class counsel estimated during the November 8 hearing that the costs of administration in this case would be $28,000-$29,000.

7

(2d Cir. 1988)); *see also Barrett v. Green Tree Servicing, LLC*, No. 3:14-cv-297, 2016 U.S. Dist. LEXIS 59795, at *7 (S.D. Ohio 2016) (noting that "the very purpose of statutory fee-shifting provisions is to advance the public interest served by the statutes in question, by providing incentives to attorneys to take on cases that otherwise would not generate income" (quoting *Roger E. Herst Revocable Tr. v. Blinds to Go (U.S.) Inc.*, No. ELH-10-3226, 2011 U.S. Dist. LEXIS 147032, at *33 (D. Md. Dec. 20, 2011))). Meanwhile, "the value of the benefit rendered to the plaintiff class" is small but not insubstantial; as noted above, each class member who does not request exclusion will receive $10.00. *Gascho*, 822 F.3d at 280. Nor does the "timing of payment" suggest undue benefit to counsel, given that payments to class members will be automatic. Fed. R. Civ. P. 23(e)(2); *see* Fed. R. Civ. P. 23(h) advisory committee's note to 2003 amendments (noting that "[s]ettlement regimes that provide for future payments, for example, may not result in significant actual payments to class members" and that "[i]n some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known").

"[T]he complexity of the litigation" is a less compelling factor: while this case did take a detour to the Sixth Circuit, the issues presented were not novel or particularly challenging. *Gascho*, 822 F.3d at 280; *see Macy*, 897 F.3d at 754 (noting that Plaintiffs' position on standing was supported by "[a] long line of Supreme Court precedent"); *see also id.* at 762 (disposing of certification issue with minimal analysis after observing that "GC's opposition to certification rests primarily on its contention that Plaintiffs lack standing"). Likewise, although the parties briefed two motions to dismiss and a motion to compel arbitration, the proceedings in this Court have hardly been complex.

Plaintiffs have not yet provided documentation as to "the value of [class counsel's] services" or "whether the services were undertaken on a contingent fee basis." *Gascho*, 822 F.3d

8

at 280.  Based on counsel's representations during the preliminary fairness hearing, however, the Court is confident that the documentation to be submitted with the motion for attorney fees will adequately support the fee request.

   4.   **Other Agreements**

Pursuant to Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  This provision refers to side agreements that, "although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23 advisory committee's note to 2003 amendments.  The parties have not filed a statement identifying any such agreements.  Moreover, paragraph 51 of the proposed settlement agreement states:

> Except as provided herein, the Agreement and the Exhibits attached to the Motion for Preliminary Approval constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning the Agreement or accompanying Exhibits other than the representations, warranties and inducements contained and memorialized in the Agreement and the accompanying Exhibits.[4]

(D.N. 74-1, PageID # 632)  Counsel confirmed at the November 8 hearing that there is no other agreement that must be disclosed.

D.   **Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiffs**

The proposed settlement's relative treatment of named and unnamed class members also warrants extra scrutiny.  Under the parties' agreement, Macy and Stowe would each receive $2,500, whereas each unnamed plaintiff would receive only $10.00.[5]  (*See* D.N. 74-1, PageID #

---

[4] Notwithstanding the "[e]xcept as provided herein" disclaimer, there does not appear to be any reference to side agreements anywhere in the settlement agreement.
[5] Plaintiffs characterize the first $1,000 as "additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i)" and the remaining $1,500 as "an incentive award for [the representatives'] service to the class."  (D.N. 74, PageID # 594)

622) All class members would receive equal benefit from the injunctive relief: GC Services has agreed that it will no longer send the debt-collection letter at issue.[6] (*Id.*, PageID # 623) In exchange for these benefits, class members (including Macy and Stowe) will release any claims against GC Services related to "allegations, claims or defenses which have been raised in the Class Action Complaint filed in this matter." (*Id.*, PageID # 627)

The Sixth Circuit has repeatedly expressed skepticism regarding the propriety of incentive payments to class representatives, noting the court's "fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). The *Dry Max* panel further observed that

> [t]he propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs. The members' incentives are thus aligned. But we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief.

*Id.* (citing *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1161 (9th Cir. 2013)).

In *Vassalle I*, the Sixth Circuit reversed the district court's approval of a class settlement of FDCPA claims, concluding that the settlement "was unfair to the unnamed class members." 708 F.3d at 756. The panel's primary concern was "the disparity between what the unnamed class members and the named plaintiffs were set to receive" under the settlement. *Vassalle II*, 655 F. App'x at 360. One aspect of this disparity was an $8,000 incentive payment to be split among the

---

[6] The value of this relief to class members—who by definition already received the letter—is unclear.

10

four class representatives.[7] *See id.* at 357, 360. Meanwhile, the panel found the benefits to unnamed class members "perfunctory" because "unnamed class members who filed claims would only receive $17.38" and "the one-year injunctive relief was unlikely to benefit the class members." *Id.* at 360. On remand, the parties negotiated a revised settlement under which "[t]he named plaintiffs no longer receive[d] debt relief" and all class members "retain[ed] the ability to use the false affidavits to challenge Midland's debt-collection actions." *Id.* In addition, the named plaintiffs' incentives were reduced to $1,000 each, while the payment to unnamed plaintiffs increased slightly to $18.75. *Id.* at 361. The Sixth Circuit found the revised settlement acceptable. *See id.* at 363.

The Sixth Circuit's discussion of incentive payments gives the Court some pause. The $2,500 incentive awards proposed in this case exceed by $1,500 the awards approved in *Vassalle II*—which, the Sixth Circuit noted, were consistent with both the FDCPA and Sixth Circuit precedent. *See id.* at 361 (citing 15 U.S.C. § 1692k(a)(2)(B); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 623, 625 (6th Cir. 2005)). And the $10.00 payments to unnamed class members—only 0.4 percent of the incentive-award amount—are less than the $18.75 payments allowed in *Vassalle II*, which were approximately 1.9 percent of the incentive awards. On the other hand, class members would have received no payment at all had Macy and Stowe not rejected GC Services' offers of judgment in the amount of $1,000—the maximum statutory damages for an individual—shortly after this action was filed. (*See* D.N. 14-1, PageID # 63-64)

---

[7] The panel's decision ultimately turned on the proposed settlement's provision that "the named plaintiffs' debts to Midland would have been extinguished[,] while the unnamed class members would have been effectively barred from challenging Midland's claims against them." *Id.* at 359-60; *see Vassalle I*, 708 F.3d at 756 ("Because we find the settlement is unfair to the unnamed class members in light of Midland's exoneration of the named plaintiffs' debts, it is unnecessary for us to pass on the appropriateness of incentive awards.").

11

In sum, the proposed incentive awards are not so excessive as to prevent preliminary approval. *Cf. Machesney v. Lar-Bev of Howell, Inc.*, No. 10-10085, 2017 U.S. Dist. LEXIS 86393, at *28-*32 (E.D. Mich. June 6, 2017) (denying preliminary approval where, *inter alia*, proposed settlement called for incentive payment of $15,000). At the final-approval stage, however, the Court will require "specific documentation—in the manner of attorney time sheets—of the time actually spent on the case by each recipient of an award" in order to justify approval of incentive payments that vastly exceed both the payments to unnamed class members and the class representatives' apparent actual damages.[8] *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 311 (6th Cir. 2016); *see In re Dry Max*, 724 F.3d at 722; *Machesney*, 2017 U.S. Dist. LEXIS 86393, at *31.

**E.     Public Interest**

Finally, the proposed settlement is in the public interest: in addition to vindicating debtors' rights to proper notice by punishing GC Services' alleged violation of the FDCPA, it would restrict GC Services from future use of the allegedly misleading letter that prompted this lawsuit. (*See* D.N. 74, PageID # 594)  Moreover, "there is a strong public interest in encouraging settlement of complex litigation and class action suits" generally, "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  This factor therefore also supports preliminary approval.

---

[8] Under the FDCPA, a successful plaintiff may recover "any actual damage sustained by such person as a result of" a debt collector's failure to comply with the Act; "each named plaintiff" may also recover $1,000 in "additional damages." 15 U.S.C. § 1692k(a). Here, as noted above, the $2,500 payments would consist of $1,000 in "additional damages" plus a $1,500 "incentive award." (D.N. 74, PageID # 594)

12

**F.      Notice to Class Members**

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to class members must convey the following information "clearly and concisely . . . in plain, easily understood language":

  (i)     the nature of the action;
  (ii)    the definition of the class certified;
  (iii)   the class claims, issues, or defenses;
  (iv)    that a class member may enter an appearance through an attorney if the member so desires;
  (v)     that the court will exclude from the class any member who requests exclusion;
  (vi)    the time and manner for requesting exclusion; and
  (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* To satisfy due process, "notice to the class [must] be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Vassalle I*, 708 F.3d at 759 (quoting *UAW*, 497 F.3d at 629).

The proposed notice submitted by Plaintiffs fulfills these requirements. The summary postcard to be mailed to class members answers the questions "What is this lawsuit about?"; "Why did I receive this notice?"; "What does the settlement provide?"; "What are my legal rights and options?"; and "When is the final fairness hearing?" (D.N. 74-1, PageID # 640) It includes the class definition and provides the website and mailing address through which class members can access the long-form notice, which contains more detail about the proposed settlement. (*Id.*; *see id.*, PageID # 643-46) Moreover, class counsel stated at the November 8 hearing that the opt-out deadline would be added to the postcard. Finally, direct mail constitutes the "best notice that is practicable under the circumstances" given that class members' names and recent mailing

addresses are readily available. Fed. R. Civ. P. 23(c)(2)(B) (requiring "individual notice to all members who can be identified through reasonable effort"); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-76 (1974). The agreement's address-updating requirements further increase the chances that the maximum number of class members will be notified. (*See* D.N. 74-1, PageID # 622-23 (providing for updating of class members' addresses at several stages of claims administration))

As explained during the preliminary fairness hearing, however, there are at least two substantive errors in the long-form notice that must be corrected before it is provided to class members. First, the table on page 1 of the notice ("Your Legal Rights and Options in This Lawsuit") incorrectly states: "If you do nothing, you will *not* receive $10, but you will give up your rights to sue Defendant for the claims resolved in this case." (D.N. 74-1, PageID # 642 (emphasis added)) This is inconsistent with both the explanation provided on page 3 of the same notice—"If you do nothing, and the settlement is approved, you will receive a check for $10, but you will give up your right to purse [sic] any claim(s) that you have against Defendant related to the claims in this case" (*id.*, PageID # 644)—and the settlement agreement itself, which contemplates payment of $10 to any class member who does not opt out.[9] (*See id.*, PageID # 622, 624, 626-27) Second, paragraph 19 states the wrong case name. (*Id.*, PageID # 646 ("To speak at the Final Approval Hearing, you must also send a letter saying that it is your 'Notice of Intention to Appear in McCurdy v. Professional Credit Service.'")) With these corrections and the change indicated at the hearing, the proposed notice will satisfy Rule 23(c) and the Due Process Clause.

---

[9] In addition to the typographical error in the sentence quoted above ("purse" instead of "pursue"), the amount of the settlement fund is not preceded by a dollar sign in paragraph 8 of the long-form notice. (D.N. 74-1, PageID # 644)

14

**III.**

In sum, the proposed settlement appears to be fair, reasonable, and adequate; Plaintiffs have "show[n] that the court will likely be able to" approve the settlement at the final-approval stage. Fed. R. Civ. P. 23(e)(1)(B)(i). Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (D.N. 74) is **GRANTED**. The definitions set forth in the parties' Settlement Agreement are incorporated by reference herein, with capitalized terms as provided in the Agreement.

(2) This matter is set for a final approval hearing on **April 10, 2020, at 2:00 p.m.** at the Gene Snyder U.S. Courthouse in Louisville, Kentucky.

(3) In compliance with the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715, Defendant, through the Settlement Administrator defined below, shall cause written notice of the proposed class settlement to be served on the United States Attorney General and the Attorney General of each state in which any Class Member resides.

(4) A third-party settlement administrator acceptable to the parties shall administer the settlement and notification to Class Members. The Settlement Administrator will be responsible for mailing the approved class-action notice and settlement checks to Class Members. All reasonable costs of notice and administration will be paid by Defendant separate and apart from the Settlement Fund. Upon the recommendation of the parties, the Court appoints **First Class, Inc.** as Settlement Administrator.

(5) With the exception of the errors noted above and at the November 8 hearing, the Court approves the form and substance of the written notices of the class action settlement,

attached to the Agreement as Exhibits 1 and 2. In accordance with the Agreement, the Settlement Administrator will mail the notice to the Class Members as expeditiously as possible, but in no event later than **twenty-one (21) days** after entry of this Order, or **December 27, 2019**. The Settlement Administrator will confirm and if necessary, update the addresses for the Class Members through standard methodology that the Settlement Administrator currently uses to update addresses.

(6)     Any Class Member who wishes to be excluded from the Class must send a written request for exclusion to the Settlement Administrator with a postmark date no later than **seventy-five (75) days** after entry of this Order, or **February 19, 2020**. To be effective, the written request for exclusion must state the Class Member's full name, address, telephone number, and email address (if available), along with a statement that the Class Member wishes to be excluded, and must be signed by the Class Member. Any Class Member who submits a valid and timely request for exclusion will not be bound by the terms of the Agreement. Any Class Member who fails to submit a valid and timely request for exclusion will be considered a Settlement Class Member and will be bound by the terms of the Agreement.

(7)     Any Class Member who intends to object to the fairness of the Settlement must file a written objection with the Court within **seventy-five (75) days** of entry of this Order, or no later than **February 19, 2020**. Further, any such Class Member must, within the same time period, provide a copy of the written objection to Class Counsel, attention: James L. Davidson, Greenwald Davidson Radbil PLLC, 5550 Glades Road, Suite 500, Boca Raton, FL 33431; and counsel for Defendant, Elizabeth M. Shaffer, Dinsmore & Shohl LLP, 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202.

To be effective, a notice of intent to object to the Settlement must

(a) contain a heading that includes the name of the case and case number;

(b) provide the name, address, telephone number, and email address (if available) of the Class Member filing the objection;

(c) be filed with the Clerk of the Court no later than seventy-five (75) days after entry of this Order;

(d) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Class Member;

(e) be sent to Class Counsel and counsel for Defendant at the addresses above by first-class mail, postmarked no later than seventy-five (75) days after entry of this Order;

(f) contain the name, address, bar number, and telephone number of the objecting Class Member's counsel, if the objecting Class Member is represented by an attorney. If the objecting Class Member is represented by an attorney, the attorney must comply with all applicable laws and rules for filing pleadings and documents in the U.S. District Court for the Western District of Kentucky;

(g) contain a statement of the specific basis for each objection;

(h) identify any documents that the objector wishes the Court to consider, including all legal authorities the objector will present at the final approval hearing; and

(i) state whether the objector intends to appear at the final approval hearing on his or her own behalf or through counsel.

Any Class Member who has timely filed an objection may appear at the final approval hearing, in person or by counsel, to be heard to the extent allowed by the Court, applying relevant law, in opposition to the fairness, reasonableness, and adequacy of the proposed settlement, and on the application for an award of attorney fees and costs. Any objection that includes a request for exclusion will be treated as an exclusion.

(8) If the Court grants final approval of the settlement, the Settlement Administrator will mail a settlement check to each Settlement Class Member who has not timely requested

exclusion in accordance with paragraph 6 above. Each Settlement Class Member who has not timely requested exclusion will receive $10.00 from the Settlement Fund.

(9) The Court will conduct a hearing (the Final Approval Hearing) on **April 10, 2020, at 2:00 p.m.** at the Gene Snyder U.S. Courthouse in Louisville, Kentucky, to review the following issues:

(a) whether this action satisfies the applicable prerequisites for class-action treatment for settlement purposes under Rule 23;

(b) whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

(c) whether a Final Order and Judgment, as provided under the Agreement, should be entered, dismissing the Lawsuit with prejudice and releasing the Released Claims against the Released Parties; and

(d) any other issues the Court deems appropriate.

Attendance by Class Members at the Final Approval Hearing is not necessary. Class Members need not appear at the hearing or take any other action to indicate their approval of the proposed class-action settlement. Class Members wishing to be heard are, however, required to appear at the Final Approval Hearing. The Final Approval Hearing may be postponed, adjourned, transferred, or continued without further notice to the Class Members.

(10) Memoranda in support of the proposed settlement must be filed with the Court no later than **thirty (30) days before the Final Approval Hearing**, or **March 11, 2020**. Briefs in opposition must be filed no later than **fourteen (14) days before the Final Approval Hearing**, or **March 27, 2020**. Reply memoranda must be filed no later than **seven (7) days before the Final Approval Hearing**, or **April 3, 2020**.

(11) Memoranda in support of any petition for attorney fees and reimbursement of costs and expenses by Class Counsel must be filed with the Court no later than **twenty-one (21) days before the deadline for Class Members to object to, or exclude themselves from, the settlement**, i.e., no later than **January 29, 2020**. Briefs in opposition must be filed no later than **twenty-one (21) days thereafter**, or **February 19, 2020**. Reply memoranda must be filed no later than **seven (7) days after the filing of any opposition brief**.

(12) The Agreement and this Order will be null and void if either of the Parties terminates the Agreement for any of the following reasons:

    (a) any specified material condition to the settlement set forth in the Agreement is not satisfied, and the satisfaction of such condition is not waived in writing by the Parties;

    (b) the Court rejects any material component of the Agreement, including any amendment thereto approved by the Parties; or

    (c) the Court approves the Agreement, including any amendment thereto approved by the Parties, but such approval is reversed on appeal and such reversal becomes final by lapse of time or otherwise.

The events described above, however, provide grounds for terminating the Agreement only after the Parties have unsuccessfully attempted and completed good-faith negotiations to salvage the settlement.

(13) If the Agreement and/or this Order is voided, then the Agreement will be of no force and effect, and the Parties' rights and defenses will be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this Order never entered.

(14) The Court retains jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and enforcement of the Agreement.

(15) The Court sets the following schedule:

| Date | Event |
| --- | --- |
| December 6, 2019 | Preliminary Approval |
| December 27, 2019 | Notice to Class |
| January 29, 2020 | Attorney-Fee Petition |
| February 19, 2020 | Exclusion/Objection |
| March 11, 2020 | Motion for Final Approval |
| March 27, 2020 | Opposition to Final Approval |
| April 3, 2020 | Reply in Support of Final Approval |
| April 10, 2020 | Final Approval Hearing |